Vincent P. Slusher
State Bar No. 00785480
vincent.slusher@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

Thomas R. Califano
New York State Bar No. 2286144
thomas.califano@dlapiper.com
Jeremy R. Johnson
New York State Bar No. 4307617
jeremy.johnson@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501

Proposed Attorneys for Lincolnshire Campus, LLC and Naperville Campus, LLC,
Debtors and Debtors in Possession

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 10-34176** |
| | § | |
| **LINCOLNSHIRE CAMPUS, LLC,** *et al.*[1] | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

## APPLICATION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) FOR AUTHORIZATION TO (A) EMPLOY AND RETAIN ALVAREZ & MARSAL HEALTHCARE INDUSTRY, LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL, AND (B) TO DESIGNATE PAUL RUNDELL AS THE CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS NUNC PRO TUNC TO THE COMMENCEMENT DATE

The above captioned debtors and debtors in possession (collectively, the "Debtors"), file this application (the "Application"), for authority pursuant to 105(a) and 363(b): (i) to employ

---

[1] The Debtors in these chapter 11 cases are (a) Lincolnshire Campus, LLC, Case No. 10-34176, (b) Naperville Campus, LLC, Case No. 10-34177, (c) Monarch Landing, Inc., Case No. 10-34179, and (d) Sedgebrook, Inc., Case No. 10-34178. A motion approving the joint administration of the Debtors' cases was entered on June 25, 2010.

EAST\42589244.2                                    1

and retain Alvarez & Marsal Healthcare Industry, LLC ("A&M") to provide the Debtors a Chief Restructuring Officer, and additional personnel as Crisis Managers, and (ii) to Appoint Paul Rundell as Chief Restructuring Officer, all nunc pro tunc to the Petition Date. In support of this Application, the Debtors submit the Declaration of Paul Rundell (the "Rundell Application Declaration"), attached hereto as Exhibit B. In further support of this Application, the Debtors respectfully represent:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 363(b) and 105 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

4. On June 15, 2010 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

5. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6. No trustee, examiner or committee has been appointed in any of the Debtors' Chapter 11 cases.

7. The factual background regarding each of the Debtors, including their current and historical business operations and the events precipitating these Chapter 11 filings, is set forth in

detail in the Affidavit of Paul Rundell in Support of First Day Motions (the "Rundell Affidavit"), and is incorporated herein by reference.

8. A&M was retained by the Debtors' parent company, Erickson Retirement Communities ("ERC"), on April 2, 2009 pursuant to the terms of an employment letter (the "Engagement Letter"). The Engagement Letter is attached hereto as Exhibit C. At that time, ERC and the Debtors had been suffering a substantial loss of revenue and lower than anticipated absorption rates. This in turn forced ERC and certain other of its related entities[2] (the "ERC Debtors") to seek Chapter 11 protection approximately nine (9) months prior to the Petition Date by filing for bankruptcy in this Court (Main Case No. 09-37010) (the "ERC Cases"). ERC's Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "ERC Plan") was confirmed on April 16, 2010. The ERC Cases are still pending before this Court.

9. The ERC Debtors chose A&M as a crisis management firm because of A&M's extensive experience providing restructuring services in reorganization proceedings and its excellent reputation for the services it has rendered in Chapter 11 cases on behalf of debtors and creditors throughout the United States. Prior to and during the ERC Debtors' cases, A&M professionals worked intimately with the ERC Debtors' senior management and other professionals and provided instrumental guidance allowing the ERC Debtors to successfully reorganize in an overwhelmingly expeditious manner. In doing so, Mr. Rundell and other A&M professionals, devoted substantial amounts of time and effort developing near-term projections,

---

[2] The Debtors in ERC's chapter 11 cases are: (a) Erickson Retirement Communities, LLC; (b) Ashburn Campus, LLC; (c) Columbus Campus, LLC; (d) Concord Campus GP, LLC; (e) Concord Campus, LP; (f) Dallas Campus GP, LLC; (g) Dallas Campus, LP; (h) Erickson Construction, LLC; (i) Erickson Group, LLC; (j) Houston Campus, LP; (k) Kansas Campus, LLC; (l) Littleton Campus, LLC: (m) Novi Campus, LLC; (n) Senior Campus Services, LLC; (o) Warminster Campus GP, LLC; and (p) Warminster Campus, LP.

assisting in short-term cash management activities, and reducing cost structures, for both the ERC Debtors as well as the Debtors in these cases. As a result, A&M has formed an excellent understanding of the Debtors' business operations and is therefore exceedingly qualified to offer the Debtors its financial expertise in their efforts to reorganize.

10. As set forth more fully in the Rundell Affidavit, the actions of certain indenture trustees necessitated the Debtors' filing Chapter 11 petitions on June 15, 2010. Contemporaneously with their bankruptcy filing, the Debtors and A&M entered into an addendum to the Engagement Letter (the "Addendum Letter"), a copy of which is also attached hereto in Exhibit D. As set forth in the Addendum Letter, the parties have agreed that Mr. Rundell, a managing director within A&M, will serve as the Debtors' CRO. Further, A&M has agreed to provide other A&M employees ("Additional Personnel") as necessary to support Mr. Rundell, and the Debtors' existing management team in their restructuring efforts during these Chapter 11 cases.

**Relief Requested**

11. By this Motion, the Debtors seek authority, pursuant to Bankruptcy Code sections 363 and 105, to employ and retain A&M to provide the Debtors a CRO as well as additional personnel, nunc pro tunc to the Petition Date, in accordance with the terms set forth in the Engagement Letter.

**A&M's Qualifications**

12. A&M, together with its affiliates, comprises a turnaround management consulting firm founded in 1983 to provide specialized debtor management and advisory services to troubled companies (the "Firm"). The Firm has since grown to become a global provider of management and advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas. The Firm's core services include

Turnaround Management Consulting, Interim and Crisis Management, Creditor Advisory, and Performance Improvement. The Firm has provided interim management services in a number of large and mid-size bankruptcy restructurings including <u>In re Lehman Brothers Holdings Inc.</u>, Case No. 08-13555 (S.D.N.Y. Sept. 15, 2008) and <u>In re Saint Vincents Catholic Medical Centers of New York</u>, Case No. 05-14945 (S.D.N.Y. July 5, 2005).

13. Mr. Rundell is also a managing director of A&M and has worked as a turnaround consultant and financial advisor for over 13 years. Mr. Rundell has a great breadth of financial restructuring experience as a result of having served in both senior management positions and as a restructuring advisor to large companies. Specifically, Mr. Rundell has advised and/or served as a senior executive for, among others, St. Vincent's Catholic Medical Centers, Sunwest Management Inc., and National Benevolent Association. A copy of Mr. Rundell's curriculum vitae is attached hereto as Exhibit E, and is incorporated herein by reference.

14. A&M has become thoroughly familiar with the Debtors' operations. Through the services that A&M has provided to both the ERC Debtors and the Debtors to date, A&M is highly qualified to serve the Debtors in these cases.

## Services to be Provided

15. Under the Engagement Letter, A&M staff have assumed, or will assume, certain positions within the Debtors' businesses. Specifically, Mr. Rundell will serve as the Chief Restructuring Officer of the Debtors, and will report to the Board of Directors and direct the Debtors' reorganization with an objective of completing a restructuring of the Debtors. Mr. Rundell is responsible for assisting the Debtors' senior management team in their post petition restructuring efforts, including negotiating with parties in interest and coordinating the "working group" of professionals who are or will be assisting the Debtors in the restructuring process or who are working for the Debtors' stakeholders.

16. As members of the Debtors' senior management, Mr. Rundell, with the assistance of additional A&M personnel, as mutually agreed upon by the Debtors and A&M (collectively, the "Additional Personnel"), will provide the senior management services that A&M and the Debtors deem appropriate and feasible in order to assist the Debtors during the Chapter 11 Cases. The Debtors believe that Mr. Rundell, and the Additional Personnel will not duplicate the services that are being provided to the Debtors in these cases by any other professionals.

17. The duties of Mr. Rundell, and the Additional Personnel will include, but are not limited to the following:

    (A)    The CRO, together with any Additional Personnel, in cooperation with the executive management of the Companies (the "Management"), shall perform a financial review of the Companies and the Campuses, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Companies and the NFPs specifically Sedgebrook Inc. and Monarch Landing Inc. ("Campuses") to their creditors, including without limitation its short term cash flows;

    (B)    The CRO will oversee Additional Personnel assisting in the identification of cost reduction and operations improvement opportunities as well as other liquidity savings opportunities;

    (C)    The CRO and any Additional Personnel shall assist Management in developing for the review of possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Companies' and the Campuses' and developing a sustainable capital structure for the Companies and such Campuses;

    (D)    The CRO shall serve as the principal contact with the Companies' and Campuses' (on behalf of the Companies) creditors and consultants with respect to the Companies' and Campuses' (on behalf of the Companies) financial and operational matters;

    (E)    The CRO and Additional Personnel, under advisement of the Management, shall manage the Companies' and Campuses' liquidity, cash flows, modeling, budgets and financial planning;

    (F)    The CRO and any Additional Personnel shall perform such other services as requested or directed by Management and agreed to by such officer.

**Terms of Compensation**

18.     The Debtors have agreed to compensate A&M monthly for the hourly services rendered by Mr. Rundell, as CRO, and the Additional Personnel, to the extent necessary to assist Mr. Rundell in his role as CRO. As of the date hereof, the Debtors agree to compensate A&M for the services of Mr. Rundell, as CRO, and the Additional Personnel at the following hourly rates:

| | |
|---|---|
| Managing Directors | $600-$700 |
| Senior Directors | $475-$550 |
| Directors | $400-$500 |
| Associates | $325-$400 |
| Analysts | $200-$275 |

Such rates are subject to adjustment annually.

19.     In addition, the Debtors will pay A&M on a monthly basis for A&M's reasonable, out-of-pocket expenses (including travel, telephone and facsimile, courier and copy expenses) incurred in connection with the engagement.

20.     Because A&M is not being employed as a professional under Bankruptcy Code section 327, it will not be submitting monthly fee applications pursuant to Bankruptcy Code sections 330 and 331. However, A&M will submit quarterly reports of compensation paid. Parties in interest shall have the right to object to fees paid within twenty days of when such quarterly reports of compensation are filed with this Court. A&M's compensation and reimbursement of expenses shall be paid by the Debtors as specified above and in the Engagement Letter.

**Prior Payments to A&M**

21.     In connection with A&M's retention as restructuring consultants in the period leading up to the Petition Date, the ERC Debtors paid approximately $4,063,556.15 to A&M for

monthly fees and expenses prior to the filing of the ERC Debtors' bankruptcy case. As of the Petition Date, A&M continued to hold the $83,630.70 retainer, and intends to apply that retainer against the final fees and expenses specific to the engagement as finally allowed by this Court.

**Indemnification & Insurance**

22. Under the terms of the Engagement Letter, the Debtors have agreed to indemnify the CRO in the same fashion provided to the Debtors' other officers and directors and certain related parties pursuant to the Indemnification Agreement attached to and incorporated by reference in the Engagement Letter. The Debtors have agreed further that the CRO will be covered as officers under the Company's existing director and officer liability insurance policies.

**Disinterestedness**

23. Even though A&M is not being retained as a professional under Bankruptcy Code section 327(a), A&M performed a conflicts check in connection with its initial engagement under the Engagement Letter. A&M has informed the Debtors that, except as may be set forth in the Rundell Application Declaration attached hereto, A&M does not represent any interest materially adverse to the Debtors, their creditors, the United States Trustee for the Northern District of Texas, any person employed by the United States Trustee for the Northern District of Texas, or any other party in interest.

24. If any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration. A&M has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these Chapter 11 Cases.

**Dispute Resolution Procedures**

25. The Debtors and A&M have agreed, subject to the Court's approval of this Application, that notwithstanding the Engagement Letter: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by A&M to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of A&M, shall be brought in this Court or the United States District Court for the Northern District of Texas (the "District Court") (if the reference is withdrawn); (b) A&M and the Debtors and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; (c) A&M and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures (as set forth in Exhibit F attached hereto); and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction. By this Application, the Debtors seek approval of this agreement by the Court. Further, A&M has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or the District Court (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

## Basis for Relief

26.     The Debtors seek to employ and retain A&M and appoint Mr. Rundell as CRO pursuant to section 363 of the Bankruptcy Code. Bankruptcy Code section 363(b) provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363. In reviewing a debtor's decision to use estate property pursuant to Bankruptcy Code section 363, courts have routinely held that transactions should be approved when they are supported by the sound business judgment of management. See, e.g., Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2d. Cir. 1983) (outlining requirements for the sale of assets under section 363(b)).

27.     Bankruptcy courts in this and other districts have analyzed the propriety of a debtor-in-possession's employment of a corporate officer under section 363 of the Bankruptcy Code on numerous occasions and have determined that it is an appropriate exercise of business judgment to employ a corporate officer in such manner. See, e.g., In re Erickson Retirement Communities, LLC, Case No. 09-37010 (SGJ) (Bankr. N.D.Tex. 2009); In re Pilgrims' Pride Corp., Case No. 08-45664 (DML) (Bankr. N.D. Tex. Dec. 30, 2008); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 17, 2007); In re Mirant Corp., Case No. 03-46590 (DML) (Bankr. N.D. Tex. Sept. 29, 2003); In re Fleming Cos., Inc., Case No. 03-10945 (MFW) (Bankr. D. Del. June 25, 2003); In re LJM2 Co-Inv., L.P., Case No. 02-38335 (SAF) (Bankr. N.D. Tex. Dec. 13, 2002); In re Kmart Corp., No. 02-02474 (SPS) (Bankr. N.D. Ill. May 22, 2002); In re Exide Techs, Inc., Case No. 02-11125 (JCA) (Bankr. D. Del. May 10, 2002).

28.     Here, the decision to employ A&M and retain Mr. Rundell as CRO should be authorized because it is based on the sound exercise of the business judgment of the Debtors' senior management. First, Mr. Rundell is well qualified to serve in his respective position. He

has extensive experience either in senior management roles or as restructuring advisors for several large companies, and is a seasoned turnaround and restructuring expert in the healthcare industry (including specialized senior housing experience). In addition, A&M has extensive experience in providing restructuring consulting services in reorganization proceedings and has an excellent reputation for the services it has rendered in Chapter 11 cases on behalf of debtors and creditors throughout the United States. The qualifications of these experts cannot be questioned.

29. Second, Mr. Rundell and the A&M team, working in conjunction with the Debtors' senior management, have proven to be of invaluable assistance in the ERC Debtors' efforts to reorganize. Further, Mr. Rundell and the A&M team have already made substantial progress in assisting in short-term cash management activities, reduction of costs, and coordinating the Debtors' efforts to prepare for a possible Chapter 11 filing. The Debtors believe that A&M, in conjunction with Mr. Rundell in his capacity as CRO, will be able to continue to provide services that benefit the Debtors' estates and creditors. Moreover, the pre-existing relationship that A&M, and Mr. Rundell have with the Debtors ensures that the appointment of a CRO at this juncture will not disrupt the administration of the Chapter 11 Cases.

30. Third, through negotiations, the Debtors have been able to secure the services of A&M, Mr. Rundell during the Chapter 11 Cases on economic terms that are fair and reasonable and beneficial to the estates. Moreover, the compensation arrangement provided for in the Engagement Letter is consistent with and typical of arrangements entered into by A&M and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

31. In view of the foregoing, the Debtors believe that the retention of A&M and Mr. Rundell is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in the Chapter 11 Cases. The Debtors believe that A&M is well qualified and able to represent the Debtors in a cost effective, efficient, and timely manner. A&M has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court. For the reasons set forth above, the Debtors respectfully request that the Court authorize the retention and employment of A&M, and Mr. Rundell pursuant to section 363 of the Bankruptcy Code.

## Notice

32. Notice of this Application has been provided to (a) the Office of the United States Trustee; (b) the Debtors' thirty largest unsecured creditors on a consolidated basis; and (c) the Debtors' prepetition secured lenders. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form annexed hereto (a) granting the relief requested herein and (b) granting such other relief as may be deemed just and proper.

Dated: June 15, 2010
      Dallas, Texas

**DLA PIPER LLP (US)**

By: /s/ Vincent P. Slusher
Vincent P. Slusher
State Bar No. 00785480
vincent.slusher@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201

Telephone: (214) 743-4572
Facsimile: (972) 813-6267

Thomas R. Califano
New York State Bar No. 2286144
thomas.califano@dlapiper.com
Jeremy R. Johnson
New York State Bar No. 4307617
jeremy.johnson@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 835-6000
Fax: (212) 835-6001

Proposed Attorneys for the Debtors
and Debtors in Possession