**EXHIBIT B**

**BID PROCEDURES ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 10-34176 |
| | § | |
| **LINCOLNSHIRE CAMPUS, LLC,** *et al.*[1] | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **Joint Administration Pending** |

**ORDER APPROVING BID PROCEDURES AND PROVIDING
CERTAIN PROTECTIONS TO SENIOR CARE
DEVELOPMENT, LLC; AND GRANTED RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned Debtors, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order approving the Bid Procedures, which are attached hereto as Exhibit 1, in connection with the sale of all of substantially all of the Debtors' assets, and providing certain protections to Senior Care Development, LLC ("SCD" or the "Buyer"), including the form and manner of service of the notice attached hereto as Exhibit 2,

---

[1] The Debtors in these chapter 11 cases are (a) Lincolnshire Campus, LLC, Case No. 10-34176, (b) Naperville Campus, LLC, Case No. 10-34177, (c) Monarch Landing, Inc., Case No. 10-34179, and (d) Sedgebrook, Inc., Case No. 10-34178. A motion seeking joint administration of the Debtors' cases was filed on June 15, 2010.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

and granting other relief related thereto; and the Court having reviewed the Motion, and having considered the statements of counsel and evidence adduced with respect to the Motion at a hearing before the Court (the "<u>Hearing</u>"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion and the Hearing was sufficient under the circumstances, and no further or other notice is required; and (v) a reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons; after due deliberation the Court having determined that the relief requested in the Motion (x) represents a sound exercise of the Debtors' business judgment, (y) is necessary and essential to maximize the value of the Debtors' estates and (z) is in the best interests of the Debtors, their estates and their creditors; and upon the record herein; and after due deliberation thereon; and good and sufficient cause having been shown;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting certain of the relief requested in the Motion, including approval of (i) the Bid Procedures, (ii) the Break-Up Fee and Expense Reimbursement, as provided for in the APA attached to the Motion as Exhibit A, as amended (the "Purchase Agreement"), for the sale of substantially all of the Debtors' assets to the Buyer, and (iii) the form and manner of the Auction and Sale Notice.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

B.     The Bid Procedures are fair, reasonable and appropriate and are designed to maximize the recovery with respect to the Sale Transaction.

C.     The Break-Up Fee and Expense Reimbursement to be paid under the circumstances described herein to the Buyer are (i) actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of Bankruptcy Code section 503(b), (ii) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Buyer's entry into the Purchase Agreement, and (iii) reasonable and appropriate in light of the size and nature of the proposed Sale Transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Buyer.

D.     Moreover, the Break-Up Fee and Expense Reimbursement are essential inducements and conditions relating to the Buyer's entry into, and continuing obligations under, the Purchase Agreement.   Unless it is assured that the Break-Up Fee and Expense Reimbursement will be available, the Buyer is unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under the Purchase Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bid Procedures).  The Break-Up Fee and Expense Reimbursement induced the Buyer to submit a bid that will serve as a minimum or floor bid on which the Debtors, their creditors and other bidders can rely.   Accordingly, the Break-Up Fee and Expense Reimbursement are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

E.     The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Break-Up Fee and Expense Reimbursement under the circumstances, timing and procedures set forth in the Motion.

F.  The Debtors have provided support for their decision to authorize the payment of the Break-up Fee and Expense Reimbursement sufficient to satisfy all conditions set forth in this Court's Standing Order Concerning Guidelines for Compensation and Expense Reimbursement of Professionals, for Early Disposition of Assets in Chapter 11 Cases, and for Motions and orders Pertaining to Use of Cash Collateral and Post Petition Financing, dated December 21, 2000.

G.  The Auction and Sale Notice is appropriate, adequate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Transaction and the Bid Procedures.  No other or further notice is required for the Sale Transaction or the Bid Procedures, as set forth herein and in the Motion.  The Debtors have demonstrated a compelling and sound business justification for the limitation of credit bidding at the Auction as is described in the Bid Procedures.

H.  The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a subsequent Sale Hearing to consider granting other relief requested in the Motion, including approval of the Sale Transaction and the transfer of the assets to the Buyer free and clear of all Encumbrances pursuant to Bankruptcy Code section 363(f).

I.  As demonstrated by the compelling and sound business justifications set forth by the Debtors in the Motion and at the Hearing, the entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and therefore

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is GRANTED to the extent set forth herein.

2.  The Bid Procedures attached hereto as <u>Exhibit 1</u> are approved in all respects and shall govern all bids and bid proceedings relating to the sale of the Debtors' assets.  The Debtors

are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

3.     The failure specifically to include or reference any particular provision of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such procedure, it being the intent of the Court that the Bid Procedures be authorized and approved in their entirety.

4.     The form and manner of service of the Auction and Sale Notice described in the Motion, and attached hereto as <u>Exhibit 2</u>, are approved in all respects.  The Debtors shall serve the Auction and Sale Notice on all of the Debtors' creditors, parties in interest and potentially interested bidders.  Service of the Auction and Sale Notice, as set forth herein, constitutes sufficient notice of the Auction and Sale Hearing.

5.     The Bid Deadline is September 7, 2010 at 5:00 p.m. (prevailing Central Time). All Potential Bidders are required to provide copies of their bids so as to received by hand and by electronic mail by the following parties on or before the Bid Deadline: by (a) counsel for Lincolnshire and Naperville, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020, Attn: Thomas R. Califano (thomas.califano@dlapiper.com) and DLA Piper LLP (US), 1717 Main Street, Dallas, TX 75201, Attn: Vincent Slusher (vince.slusher@dlapiper.com); (b) CLW Real Estate Services Group, 4301 Anchor Plaza Parkway, Suite 400, Tampa, FL 33634 Attn: Allen McMurtry (amcmurtry@clwrg.com), (c) Alvarez & Marsal LLP, 55 West Monroe, Chicago, IL 60603, Attn: Paul Rundell (prundell@alvarezandmarsal.com).  The Debtors will within one day provide the bids received to (a) counsel for Monarch Landing and Sedgebrook, McGuire, Craddock & Strother, P.C., 3550 Lincoln Plaza, 500 N. Akard Street, Dallas TX 75201, Attn: J. Mark Chevalier (mchevallier@mcslaw.com) and Whiteford, Taylor, and Preston LLP, Seven Saint Paul Street, Baltimore MD 21202, Attn: Martin Fletcher

(mfletcher@wtplaw.com); (b) Haynes and Boone, LLP, Counsel for U.S. Bank National Association, as Indenture Trustee, 2323 Victory Avenue, Suite 700, Dallas, TX 75219, Attn: Trey Monsour, Esq. (trey.monsour@haynesboone.com); (c) Sheppard Mullin Richter & Hampton LLP, Counsel for U.S. Bank National Association, As Indenture Trustee, 333 South Hope Street, 48th Floor, Los Angeles, CA 90071, Attn: Kyle J. Mathews, Esq. (kmathews@sheppardmullin.com); (d) Gardere Wynne Sewell LLP, Counsel for Wells Fargo Bank National Association, 1601 Elm Street, 3000 Thanksgiving Tower, Dallas, TX 75201, Attn: Daniel C. Scott, Esq. (dscott@gardere.com); (e) Spencer Fane Britt & Browne LLP, Counsel for Wells Fargo Bank National Association, 1000 Walnut, Suite 1400, Kansas City, Missouri 64106, Attn: Scott Goldstein (sgoldstein@spencerfane.com; (f) counsel for Senior Care Development, LLC, Hinckley Allen & Snyder, LLP, 20 Church Street, Hartford, CT 06103, Attn: William S. Fish, Jr., (wfish@haslaw.com); (g) the Office of the Illinois Attorney General, 100 West Randolph Street, Chicago, IL 60601, Attn: Brent D. Stratton (bstratton@atg.state.il.us); and (h) counsel for Resident Committee of Unsecured Creditors appointed in these cases, (collectively, the "Notice Parties").

6.     The Auction, if necessary under the Bid Procedures, will be held on September 14, 2010 at the offices of DLA Piper, 1251 Avenue of the Americas, New York, NY 10020-1104 at 12:00 noon (prevailing Eastern Time).

7.     Objections to the Sale Transaction shall be in writing, shall state the basis of such objection with specificity and shall be filed with the Court, and served so as to be received on or before September 17, 2010, at 4:00 p.m. (prevailing Central Time) on the Notice Parties.

8.     The Sale Hearing, at which the Debtors shall seek approval of the Successful Bid, shall be held in this Court on September 21, 2010, at 10:00 a.m. (prevailing Central Time).  The

Sale Hearing may be adjourned or rescheduled without further notice other than an announcement of the adjourned date at the Sale Hearing.

9. The Buyer shall constitute a Qualified Bidder (as defined in the Bid Procedures) for all purposes and in all respects with regard to the Bid Procedures.

10. The Debtors are hereby authorized, in the exercise of their sound business judgment, to offer the Buyer a Break-Up Fee in the amount of $1,500,000, which includes an Expense Reimbursement not to exceed $350,000. The Break Up Fee shall be allocated as follows: $250,000 to Monarch Landing and $1,250,000 to Sedgebrook. The payment of the Break-Up Fee shall be expressly conditioned on the consummation of the Sale Transaction to a party that is not the Buyer or affiliated with the Buyer, and shall be paid solely from proceeds of sale at closing of the Sale Transaction. Notwithstanding the foregoing, in the event that there is not a Sale Transaction to a party that is not the Buyer or affiliated with the Buyer, the Expense Reimbursement portion of the Break-Up Fee shall be allowed and payable on the terms set forth in the APA. The Break-Up Fee and Expense Reimbursement shall be a superpriority administrative expense claim against the Debtors' estates under Bankruptcy Code sections 503(b) and 507(b).

11. The failure of any objecting person or entity to timely file its objection shall be an absolute bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or the consummation and performance of the Sale Transaction, if any (including the transfer free and clear of all Encumbrances of the Debtors' assets pursuant to the Sale Transaction).

12. The Debtors are authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established and relief granted in this Order.

13.     Notwithstanding anything to the contrary in the APA, the Debtors are authorized to interview, qualify, encourage and negotiate with, any Potential Bidder in addition to the Buyer prior to the completion of the Auction.

14.     To the extent, if any, anything contained in this Order conflicts with the Motion, this Order and the provisions of the Bid Procedures attached hereto shall govern and control.

15.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall take effect immediately upon its entry.

16.     This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.

Dated:      June [__], 2010
            Dallas, Texas


                                        _____
                                        HONORABLE STACY G.C. JERNIGAN
                                        UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

## Bid Procedures

Set forth below are the bid procedures (the "Bid Procedures") to be employed with respect to the sale of substantially all of the assets of Lincolnshire Campus, LLC, Naperville Campus, LLC, Monarch Landing, Inc., and Sedgebrook, Inc., debtors and debtors in possession (the "Debtors") in the jointly administered chapter cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), Case No. 10-34176.

The Debtors propose to sell substantially all of their assets (the "Sale Transaction") to the stalking horse bidder Senior Care Development LLC ("SCD" or "Buyer") for the aggregate purchase price of approximately $20,000,000 cash plus assumption of liabilities as set forth in the Purchase Agreement ("Purchase Price") pursuant to that certain Asset Purchase Agreement, dated as of June 24, 2010, by and among SCD and the Debtors (the "APA"). The cash purchase price will be allocated as follows: $4,250,000 to the Monarch Landing assets and $15,750,000 to the Sedgebrook assets. The Sale Transaction pursuant to the APA is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Participation Requirements

Any person desiring to submit a bid for all or part of the Debtors' assets (a "Potential Bidder") will be required to deliver (unless previously delivered) to the Debtors, on or before the Bid Deadline (as defined below), the following in addition to the other materials required hereby (collectively, the "Participation Requirements"):

(1)    an executed confidentiality agreement in form and substance satisfactory to the Debtors; and

(2)    satisfactory written evidence of available funds or a firm commitment for financing sufficient for the Potential Bidder to consummate the Sale Transaction.

The financial information and credit-quality support of any Potential Bidder must demonstrate the financial capability of the Potential Bidder to timely consummate the Sale Transaction pursuant to a Qualified Bid (as defined below).

**Due Diligence**

The Debtors will afford any Potential Bidder who satisfies the Participation Requirements, such due diligence access or additional information as the Debtors, in their business judgment, determine to be reasonable and appropriate; provided, however, that the same access and information must also be made available to the Buyer. Additional due diligence will not be provided after the Bid Deadline.

Interested investors requesting information about the qualification process, and Qualified Bidders (as defined below) requesting information in connection with their due diligence, should contact CLW Real Estate Services Group, 4301 Anchor Plaza Parkway, Suite 400, Tampa, FL 33634 Attn: Allen McMurtry (amcmurty@clwrg.com).

**Bid Deadline**

A Potential Bidder that desires to make a bid must deliver written copies of its bid by hand and email to the following parties so as to be received no later than 5:00 p.m. (prevailing Central Time) on September 7, 2010 (the "Bid Deadline"): by (a) counsel for Lincolnshire and Naperville, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020, Attn: Thomas R. Califano (thomas.califano@dlapiper.com) and DLA Piper LLP (US), 1717 Main Street, Dallas, TX 75201, Attn: Vincent Slusher (vince.slusher@dlapiper.com); (b) CLW Real Estate Services Group, 4301 Anchor Plaza Parkway, Suite 400, Tampa, FL 33634 Attn: Allen McMurtry (amcmurtry@clwrg.com), (c) Alvarez & Marsal LLP, 55 West Monroe, Chicago, IL 60603, Attn: Paul Rundell (prundell@alvarezandmarsal.com). The Debtors will within one day provide the bids received to (a) counsel for Monarch Landing and Sedgebrook, McGuire, Craddock & Strother, P.C., 3550 Lincoln Plaza, 500 N. Akard Street, Dallas TX 75201, Attn: J. Mark Chevalier (mchevallier@mcslaw.com) and Whiteford, Taylor, and Preston LLP, Seven Saint Paul Street, Baltimore MD 21202, Attn: Martin Fletcher (mfletcher@wtplaw.com); (b) Haynes and Boone, LLP, Counsel for U.S. Bank National Association, as Indenture Trustee, 2323 Victory Avenue, Suite 700, Dallas, TX 75219, Attn: Trey Monsour, Esq. (trey.monsour@haynesboone.com); (c) Sheppard Mullin Richter & Hampton LLP, Counsel for U.S. Bank National Association, As Indenture Trustee, 333 South Hope Street, 48th Floor, Los Angeles, CA 90071, Attn: Kyle J. Mathews, Esq. (kmathews@sheppardmullin.com); (d) Gardere Wynne Sewell LLP, Counsel for Wells Fargo Bank National Association, 1601 Elm Street, 3000 Thanksgiving Tower, Dallas, TX 75201, Attn: Daniel C. Scott, Esq. (dscott@gardere.com); (e) Spencer Fane Britt & Browne LLP, Counsel for Wells Fargo Bank National Association, 1000 Walnut, Suite 1400, Kansas City, Missouri 64106, Attn: Scott Goldstein (sgoldstein@spencerfane.com); (f) counsel for Senior Care Development, LLC, Hinckley Allen & Snyder, LLP, 20 Church Street, Hartford, CT 06103, Attn: William S. Fish, Jr., (wfish@haslaw.com); (g) the Office of the Illinois Attorney General, 100 West Randolph Street,

Chicago, IL 60601, Attn: Brent D. Stratton (bstratton@atg.state.il.us); and (h) counsel for Resident Committee of Unsecured Creditors appointed in these cases, (collectively, the "Notice Parties").

## Bid Requirements

Each bid must be a written offer from a Potential Bidder, not contingent on any event, including any due diligence investigation, receipt of financing or receipt of further approvals (other than customary regulatory approvals), that (1) offers to consummate the Sale Transaction on terms no less favorable to the Debtors than those set forth in the APA; (2) provides that the Potential Bidder takes assignment of, and agrees to honor, all terms of the Residence and Care Agreements for each of the residents at Debtors' facilities, including but not limited to the right of each such resident to the refund of their entrance deposit in accordance with the terms of such applicable Residence and Care Agreement, (3) includes a marked copy of the APA to show any proposed amendments thereto (the "Modified Agreement") and a clean and executed Modified Agreement; (4) includes a statement that there are no conditions precedent to the bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid; (5) states that such offer is binding and irrevocable until the consummation of the Sale Transaction; (6) offers to pay: (i) in the event of a joint bid for assets purchased under the APA, a purchase price that is greater than $50,970,000 which is the purchase price contained in the APA ($49,270,000), plus the Break-Up Fee ($1,500,000), plus $200,000 (the "Initial Bid Increment"); or (ii) in the event of a separate bid for Monarch Landing $3,350,000 (the "Monarch Landing Minimum Price") plus assumption of the debt associated with Monarch Landing assigned under the Purchase Agreement and/or a separate bid for Sedgebrook $17,100,000 (the "Sedgebrook Minimum Price") plus assumption of the debt associated with Sedgebrook assigned under the Purchase Agreement; (7) discloses the identity of each entity that will be bidding or otherwise participating in connection with such bid, and the complete terms of any such participation; (8) includes the names and contact information of members of the bidder who will be available to answer questions regarding the offer; (9) includes the names of external advisors including financial, legal and accounting firms, as well as industry consultants or other resources; (10) provides a statement acknowledging that the Potential Bidder (other than the Buyer) is not entitled to any break-up fee, termination fee, expense reimbursement or similar payment; (11) provide answers to the Resident Questionnaire annexed hereto; (12) identifies the management company which the bidder proposes to use; and (13) in the event of a joint bid, each bid shall provide allocation of the purchase price between the Monarch Landing and Sedgebrook assets. Bids are not required to adopt the business structure as set forth in the APA, but may provide for a not-for-profit entity as the operator of the resident communities, as is currently the case with Monarch, Inc. and Sedgebrook, Inc. The Debtors will consider all bids submitted whether or not they conform to the form set forth in the

Purchase Agreement and will consider bids for less than all of the assets proposed to be sold under the Purchase Agreement.

Additionally, bids must be accompanied by (1) a wire transfer to the Debtors of an amount in immediately available funds equal to at least $2,000,000 (the "Good Faith Deposit"), and (2) written evidence of available cash or a firm commitment for financing and such other evidence of ability to consummate the transaction as the Debtors may reasonably request. To the extent any Potential Bidder proposes to include non-cash consideration in its bid (other than assumption of debt), such non-cash consideration must be freely marketable and such bid must be accompanied by the form of note or other type of instrument in connection with such non-cash consideration. Non-cash consideration will only be considered if it is acceptable to the Indenture Trustees. The Indenture Trustees shall be entitled to credit bid (subject to payment of the Break Up Fee in cash and assumption of the Residence and Care Agreements), pursuant to Bankruptcy Code section 363(k) or otherwise at the conclusion of the Auction. The determination of whether to accept any such credit bid shall be subject to the Debtors' determination of whether such credit bid is higher and better and the Indenture Trustee's reserve the right to contest such determination.

## Qualified Bids and Bidders

A bid received from a Potential Bidder that meets the requirements set forth in the preceding two paragraphs will be considered a "Qualified Bid" if the Debtors, in consultation with their advisors and all parties in interest, reasonably believe that such bid is higher or otherwise better than the bid set forth in the APA and would be reasonably expected to be consummated if selected as the Successful Bid (as defined below). A bid may be deemed qualified if it is either for solely the Monarch Landing or Sedgebrook assets so long as such bid exceeds the Monarch Landing Minimum Price or Sedgebrook Minimum Price as applicable provided however that if a single entity is (or related entities are) the winning bidder or bidders for each project, the bid for each project shall not be less than the Purchase Price . The Debtors reserve the right, in their sole reasonable discretion, to waive noncompliance with any one or more of these requirements and deem an otherwise not Qualified Bid to be a Qualified Bid. The Debtors will advise all Qualified Bidders of any such waiver and the basis for which it was granted at the Auction.

The Debtors will review each bid received from a Potential Bidder and determine whether it meets the requirements of a Qualified Bid. A Potential Bidder making a Qualified Bid who has also satisfied the Participation Requirements will be deemed a "Qualified Bidder." The APA is a Qualified Bid and the Buyer is a Qualified Bidder for all purposes and requirements of these Bid Procedures. The Debtors will share all bids received with the Residents Committee and the Indenture Trustees within thirty six (36) hours of receipt.

In determining whether a bid is a Qualified Bid, the Debtors will consider factors such as (1) the amount of such bid, (2) the risks and timing associated with consummating such bid, (3) the risks associated with any non-cash consideration in such bid, (4) the ability of the Potential Bidders to obtain appropriate regulatory approvals, and (5) any other factors deemed relevant by the Debtors in their reasonable discretion. The Debtors will consult with the other parties including the Indenture Trustees to ascertain their preferences with respect to qualifications.

In addition, the Debtors may reject any bid that (1) is on terms that are more burdensome or conditional than the terms of the APA, (2) includes non-cash consideration which is not freely marketable unless such non-cash consideration is agreed to by the Indenture Trustees, (3) is subject to any due diligence, financing condition or other contingencies or conditions that are not included in the APA, or (4) is received after the Bid Deadline.

Subject to other provisions of these Bid Procedures, the Debtors will, no later than 5:00 p.m. (prevailing Central Time) on September 10, 2010, advise each Potential Bidder that submits a bid whether its bid is a Qualified Bid.

## Auction Participation

Unless otherwise agreed to by the Debtors, only Qualified Bidders, members of the Official Residents Committee and the Indenture Trustees , the holders of the Bonds the letter of Credit Provider and their counsel and their legal or financial professionals are eligible to attend or participate at the Auction (as defined below). Subject to the other provisions of these Bid Procedures, if the Debtors do not receive any Qualified Bids other than the APA or if no Qualified Bidder other than the Buyer has indicated its intent to participate in the Auction, the Debtors will not hold an auction and the Buyer will be named the Successful Bidder, subject to the Indenture Trustees right to credit bid as provided for herein.

## Auction

If more than one Qualified Bid has been received and more than one Qualified Bidder has indicated its intent to participate in the Auction, the Debtors will conduct an auction (the "Auction") for the sale of substantially all of the Debtors' assets. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale Transaction. Prior to the Auction, the Debtors will select, in their sole reasonable discretion, after consultation with all parties in interest, the Qualified Bid that represents the then-highest or otherwise best value to the Debtors (the "Baseline Bid") to serve as the starting point for the Auction. The Baseline Bid may be comprised of a combination of Qualified Bids.

The Auction shall take place at 12:00 noon (prevailing Eastern Standard Time) on September 14, 2010 at the offices of DLA Piper, 1251 Avenue of the Americas, New York, NY 10020-1104.  At the Auction, only the Buyer and other Qualified Bidders will be permitted to increase their bids or make any subsequent bids.  The bidding will start at the purchase price and terms proposed in the Baseline Bid and continue in increments of at least $200,000 in cash or cash equivalents for joint bids and $100,000 for bids on any single projects.  Qualified Bidders may participate in person or by representative.  The Auction shall be transcribed by a qualified court reporter.

Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction and such other information as the Debtors reasonably determine is relevant, the Debtors may conduct the Auction in the manner they reasonably determine, in their business judgment, will promote the goals of the bid process, will achieve the maximum value for all parties in interest and is not inconsistent with any of the provisions of these Bid Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith after consultation with all parties in interest.  Such rules will provide that (1) the procedures must be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder; (2) all bids will be made and received in one room, on an open basis, and all other Qualified Bidders will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other bidders throughout the entire Auction; and (3) each Qualified Bidder will be permitted a fair, but limited, amount of time to respond to the previous bid at the Auction. The Debtors will adopt auction procedures substantially in the form annexed hereto.  The Debtors reserve the right to amend or modify the Auction Procedures prior to the Auction.  The Debtors agree to consult with the Indenture Trustees on any amendments and modifications.  The Indenture Trustees reserve their right to object to any such amendments and modifications.

The Auction shall continue until there is only one offer (or in the case of separate bids, two offers) that the Debtors determine, subject to Bankruptcy Court approval, is the highest or best offer from among the Qualified Bidders (including the Buyer) submitted at Auction.  In making this decision, the Debtors, may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder, the effect of the Sale Transaction on the residents of the Debtors and the net benefit to the Debtors' estates (the "<u>Successful Bid</u>"). The Qualified Bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser, as set forth in the Modified Purchase

Agreement. The Debtors will consult with each of the parties in interest before choosing the Successful Bid.

Immediately prior to the conclusion of the Auction, the Debtors shall (1) review each bid made at the Auction on the basis of financial and contractual terms and such other factors as may be relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (2) identify the Successful Bid; and (3) notify all Qualified Bidders at the Auction, prior to its conclusion, of the name or names of the Successful Bidder and the amount and other material terms of the Successful Bid.

## Acceptance of Qualified Bids

The Debtors presently intend to sell substantially of their assets to the Qualified Bidder(s) that submit(s) the highest and best bid(s). The Debtors' presentation to the Bankruptcy Court for approval of any Successful Bid does not constitute the Debtors' acceptance of such bid. The Debtors will be deemed to have accepted a bid only when it has been approved by the Bankruptcy Court at the Sale Hearing (defined below). After conclusion of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and make and pay for all necessary filings with all applicable governmental or other authorities.

## Assumption of Executory Contracts and Unexpired Leases

The APA may provide for the assumption and assignment of executory contracts and unexpired leases to the Buyer. The proposed process for evaluating which executory contracts and unexpired leases will be assigned should be similar to the process proposed in the APA. In all circumstances, the Buyer or Qualified Bidder shall be responsible for all cure amounts under Bankruptcy Code section 365.

## Modifications

The Debtors may (1) determine, in their business judgment, which bid or bids, if any, constitute the highest or otherwise best offer for the Debtors' assets; (2) reject, at any time before entry of an order of the Bankruptcy Court approving any bid as the Successful Bid, any bid that, in the Debtors' sole discretion, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (c) contrary to the best interests of the Debtors and the Debtors' estates and creditors; and (3) withdraw, in their business judgment, the Motion if contrary to the best interests of the Debtors and the Debtors' estates and creditors. The Debtors may extend or alter any deadline contained herein that will better promote the maximization of the value of their estates. The Bid Procedures set forth herein are

for the benefit of the Debtors and their estates. The Debtors may waive or modify these provisions or adopt additional procedures as they see fit in their business judgment after consultation with all parties in interest.

## Sale Hearing

The Debtors will seek entry of an order from the Bankruptcy Court at a hearing (the "Sale Hearing") to begin on September 20, 2010 at 10:00 a.m. (prevailing Central Time), to approve and authorize the Sale Transaction to the Successful Bidder on terms and conditions determined in accordance with the Bid Procedures.

## Back-Up Bidder and Return of Good Faith Deposit

If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid (including the Buyer), as determined by the Debtors in the exercise of their business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until one (1) business day after the closing of the Sale Transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court.

Except as otherwise provided herein or in the Purchase Agreement, Good Faith Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) business day following the Sale Hearing. The Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until one (1) business day after the closing of the Sale Transaction with the Successful Bidder.

# RESIDENT QUESTIONNAIRE

1.      How will you manage the facilities and, if a management company will be employed -

      a.      what is the identity of the management company?

      b.      what experience and background does the management company have?

      c.      what is the identity, experience, and background of the individuals who will be operating the facilities on behalf of the management company?

      d.      what are the terms of the management company's employment?

      e.      will the management company will be a not-for-profit entity?

2.      What input will the residents have with respect to the management and operation of the facilities?

3.      What are your plans for the expansion and renovation of the facilities (including any plans for the Renaissance Gardens facilities)?

4.      What plans do you have for attracting new residents?

5.      What programs, services, and benefits will you provide (specifically, any programs, services, and benefits relating to healthcare and security)?

6.      Do you anticipate any changes in the charges that residents are required to pay and, if so, which charges will change and how much will they change?

**Exhibit 2**

**Proposed Auction and Sale Notice**

Vincent P. Slusher, State Bar No. 00785480
vince.slusher@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

Thomas R. Califano, NY Bar No. 2286144
thomas.califano@dlapiper.com
Jeremy R. Johnson, NY Bar No. 4307617
jeremy.johnson@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

J. Mark Chevallier, State Bar No. 04189170
mchevallier@mcslaw.com
James G. Rea, State Bar No. 24051234
jrea@mcslaw.com
McGUIRE, CRADDOCK & STROTHER, P.C.
3550 Lincoln Plaza
500 N. Akard St.
Dallas, TX 75201
Telephone: (214) 954-6800
Facsimile: (214) 954-6850

Martin T. Fletcher, MD Bar No. 07608
mfletcher@wtplaw.com
Stephen F. Fruin, MD Bar No. 08456
sfruin@wtplaw.com
Thomas J. Francella, Jr., DE Bar No 3835
tfrancella@wtplaw.com
WHITEFORD, TAYLOR AND PRESTON, L.L.P.
Seven Saint Paul Street
Baltimore, MD 21202
Telephone: (410) 347-8700
Facsimile: (410) 752-7092

Proposed Attorneys for Lincolnshire Campus, LLC and
Naperville Campus, LLC, Debtors and Debtors in
Possession

Proposed Attorneys for Monarch Landing, Inc. and
Sedgebrook, Inc., Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 10-34176 |
| | § | |
| **LINCOLNSHIRE CAMPUS, LLC,** *et al.*[1] | § | **Chapter 11** |
| | § | |
| Debtors. | § | **Joint Administration Pending** |

### NOTICE OF AUCTION AND SALE

**PLEASE TAKE NOTICE** that on [__], 2010, the above-referenced debtors and debtors

in possession (collectively, the "Debtors"), filed their Motion of Lincolnshire Campus, LLC,

---

[1] The Debtors in these chapter 11 cases are (a) Lincolnshire Campus, LLC, Case No. 10-34176, (b) Naperville Campus, LLC, Case No. 10-34177, (c) Monarch Landing, Inc., Case No. 10-34179, and (d) Sedgebrook, Inc., Case No. 10-34178. A motion seeking joint administration of the Debtors' cases was filed on June 15, 2010.

Naperville Campus, LLC, Monarch Landing, Inc. and Sedgebrook, Inc. for Orders (I) Approving Bid Procedures and Providing Certain Protections to Senior Care Development, LLC, and (II) Authorizing the (A) Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interest and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "Sale Motion") with the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court").  The Debtor has received a Qualified Bid from Senior Care Development, LLC ("Buyer").  All parties that may be interested in submitting a bid for the substantially all of the Debtors' assets[2] or any portion thereof or taking part in the Auction must read carefully both the Bid Procedures and the order approving the Bid Procedures (the "Bid Procedures Order").

      **PLEASE TAKE FURTHER NOTICE** that on [__], 2010, following a hearing held on [__], 2010, the Bankruptcy Court entered the Bid Procedures Order and scheduled a hearing to consider the Sale Motion for September 20, 2010 at 10:00 a.m. (prevailing Central Time) (the "Sale Hearing").  You may obtain a copy of the APA by making a written request to the undersigned counsel.

      Only those parties that submit Qualified Bids may participate in the Auction; if you are interested in determining how to submit such a Qualified Bid, you must comply with the terms of the Bid Procedures.  Any party in interest wishing to receive a complete set of the APA, the Sale Motion, and the Bid Procedures Order may do so free of charge by contacting DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020 Attn: Evelyn Rodriguez.

---

[2] Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed to them in the Bid Procedures.

**PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in this process and submit a bid for the Assets, any portion thereof, or other of the Debtors' assets, must submit their competing bid prior to September 7, 2010, at 5:00 p.m. (prevailing Central Time) (the "<u>Bid Deadline</u>") to: by (a) counsel for Lincolnshire and Naperville, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020, Attn: Thomas R. Califano (thomas.califano@dlapiper.com) and DLA Piper LLP (US), 1717 Main Street, Dallas, TX 75201, Attn: Vincent Slusher (vince.slusher@dlapiper.com); (b) CLW Real Estate Services Group, 4301 Anchor Plaza Parkway, Suite 400, Tampa, FL 33634 Attn: Allen McMurtry (amcmurtry@clwrg.com), (c) Alvarez & Marsal LLP, 55 West Monroe, Chicago, IL 60603, Attn: Paul Rundell (prundell@alvarezandmarsal.com). The Debtors will within one day provide the bids received to (a) counsel for Monarch Landing and Sedgebrook, McGuire, Craddock & Strother, P.C., 3550 Lincoln Plaza, 500 N. Akard Street, Dallas TX 75201, Attn: J. Mark Chevalier (mchevallier@mcslaw.com) and Whiteford, Taylor, and Preston LLP, Seven Saint Paul Street, Baltimore MD 21202, Attn: Martin Fletcher (mfletcher@wtplaw.com); (b) Haynes and Boone, LLP, Counsel for U.S. Bank National Association, as Indenture Trustee, 2323 Victory Avenue, Suite 700, Dallas, TX 75219, Attn: Trey Monsour, Esq. (trey.monsour@haynesboone.com); (c) Sheppard Mullin Richter & Hampton LLP, Counsel for U.S. Bank National Association, As Indenture Trustee, 333 South Hope Street, 48th Floor, Los Angeles, CA 90071, Attn: Kyle J. Mathews, Esq. (kmathews@sheppardmullin.com); (d) Gardere Wynne Sewell LLP, Counsel for Wells Fargo Bank National Association, 1601 Elm Street, 3000 Thanksgiving Tower, Dallas, TX 75201, Attn: Daniel C. Scott, Esq. (dscott@gardere.com); (e) Spencer Fane Britt & Browne LLP, Counsel for Wells Fargo Bank National Association, 1000 Walnut, Suite 1400, Kansas City, Missouri 64106, Attn: Scott Goldstein

(sgoldstein@spencerfane.com); (f) counsel for Senior Care Development, LLC, Hinckley Allen & Snyder, LLP, 20 Church Street, Hartford, CT 06103, Attn: William S. Fish, Jr., (wfish@haslaw.com); (g) the Office of the Illinois Attorney General, 100 West Randolph Street, Chicago, IL 60601, Attn: Brent D. Stratton (bstratton@atg.state.il.us); and (h) counsel for any Official Committee of Unsecured Creditors appointed in these cases, (collectively, the "Notice Parties").  The Debtors shall determine whether a bidder is a Qualified Bidder.

**PLEASE TAKE FURTHER NOTICE** that if a Qualified Bid (other than Buyer's Qualified Bid) is received by the Bid Deadline, an auction (the "Auction") with respect to a contemplated transaction shall take place on September 14, 2010, at 12:00 noon (prevailing Eastern Standard Time) at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020-1104.  If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, Buyer will be deemed the Successful Bidder subject to rights of the Indenture Trustees to credit bid as provided for in the Bid Procedures, the APA will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek approval of and authority to consummate the transaction contemplated by the APA.

Only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction.  Only the authorized representatives of each of the Qualified Bidders, the Committee, and the Debtors shall be permitted to attend the Auction.  At the Auction, Qualified Bidders will be permitted to increase their bids.  The bidding at the Auction shall start at the purchase price stated in the Baseline Bid as disclosed to all Qualified Bidders prior to commencement of the Auction, and continue in increments of at least $250,000.  The Successful Bid shall be determined by the Debtors in their discretion, in consultation with the Committee, or as determined by the Bankruptcy Court in the event of a dispute.

At the Sale Hearing, the Debtors will present the Successful Bid to the Bankruptcy Court for approval. The Debtors will sell the Assets or any portion thereof to the Successful Bidder. If the Successful Bidder fails to consummate an approved Sale because of a breach or a failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid, as approved at the Sale Hearing, shall be deemed to be the Successful Bid and the Debtor shall be authorized to effect such Sale without further order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at www.txnb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, in text-searchable Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format (in either case, with a hard-copy delivered directly to Chambers), and shall be served upon: (a) the Office of the United States Trustee for the Northern District of Texas, 1100 Commerce Street, Room 976, Dallas, Texas 75242; (b) the Notice Parties; and (c) all those persons and entities that have formally requested notice by filing a written request for notice, pursuant to Bankruptcy Rule 2002 and the Local Bankruptcy Rules, so as to be actually received no later than September 17, 2010 at 4:00 p.m. (prevailing Central Time). Only those responses that are timely filed, served and received will be considered at the Hearing. Failure to file a timely objection may result in entry of orders granting the Motion as requested by the Debtors.

Dated: July 15, 2010.

**DLA PIPER LLP (US)**                    **McGUIRE, CRADDOCK & STROTHER, P.C.**

By: /s/ Vincent P. Slusher
Vincent P. Slusher, State Bar No. 00785480
vince.slusher@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

Thomas R. Califano, NY Bar No. 2286144
thomas.califano@dlapiper.com
Jeremy R. Johnson, NY Bar No. 4307617
jeremy.johnson@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Proposed Attorneys for Lincolnshire Campus, LLC and Naperville Campus, LLC, Debtors and Debtors in Possession

By: /s/ J. Mark Chevallier
J. Mark Chevallier, State Bar No. 04189170
mchevallier@mcslaw.com
James G. Rea, State Bar No. 24051234
jrea@mcslaw.com
McGUIRE, CRADDOCK & STROTHER, P.C.
3550 Lincoln Plaza
500 N. Akard St.
Dallas, TX 75201
Telephone: (214) 954-6800
Facsimile: (214) 954-6850

Martin T. Fletcher, MD Bar No. 07608
mfletcher@wtplaw.com
Stephen F. Fruin, MD Bar No. 08456
sfruin@wtplaw.com
Thomas J. Francella, Jr., DE Bar No 3835
tfrancella@wtplaw.com
WHITEFORD, TAYLOR AND PRESTON, L.L.P.
Seven Saint Paul Street
Baltimore, MD 21202
Telephone: (410) 347-8700
Facsimile: (410) 752-7092

Proposed Attorneys for Monarch Landing, Inc. and Sedgebrook, Inc., Debtors and Debtors in Possession

# *AUCTION PROCEDURES*

<u>Stalking Horse Bid</u>.  The Stalking Horse bid will be treated as having two components:

a) a joint component, consisting of a joint bid for both Monarch and Sedgebrook, allocated $[4.25] million to Monarch and $[15.75] million to Sedgebrook ; and

(b) a single component, consisting of  two single bids for Sedgebrook and Monarch allocated $[15.75] MM for the Sedgebrook property and $[3]MM for the Monarch property.

<u>Purchased Assets</u>.  The Monarch property shall include all "Monarch Landing Assets" (as defined in the APA).  The Sedgebrook property shall include all "Sedgebrook Assets" (as defined in the APA).  [*Note:  The APA to be revised to clarify that operating cash and trustee-held funds are not being acquired.*]

<u>Auction Format</u>.  The auctions of the Monarch and Sedgebrook properties will take place simultaneously at the same auction, with one auctioneer accepting all eligible bids.  The Stalking Horse Bid will be the opening bid.  The following types of bids will then be accepted (a bid must be of only one of the following types):

- Single bid for either Sedgebrook or Monarch;
- Single bids for both Sedgebrook and Monarch; and
- Joint (conditional) bids for both Sedgebrook and Monarch.  A joint bid is submitted on the condition that it is effective for a single project if and only if the bidder's joint bid for the other project is also the winning bid.

In order for a bid to be considered a joint bid, the bidder must announce that the bid is a joint bid.  Otherwise, the bid will be considered to be two single bids.

<u>Eligible Bids</u>.  To be an "eligible bid,"

(i)        a bid submitted as a single bid must exceed the "live" bid for the applicable project by the minimum bidding increment of $100,000[1]; and

(ii)       a bid submitted as a joint bid must exceed the "live" bids for each project by at least $100,000 (meaning that joint bids must be at least $200,000 higher in the aggregate than the "live" bids).[2]

---

[1] The initial bid, however, must exceed the Stalking Horse Bid for such project plus $100,000 plus $1,250,000 for Sedgebrook or $250,000 for Monarch Landing, as the case may be.

[2] If the initial bid is a joint bid, however, it must exceed the Stalking Horse Bid plus $200,000 plus $1,250,000 for Sedgebrook and $250,000 for Monarch Landing.

<u>Single Bidder Winning Both Projects; Joint Bids for Project.</u>   If a single entity is (or  related entities are) the winning bidder(s) at both projects, whether by single or joint bids, or a joint bid is submitted for the projects, the bid for each project must be not less than $15.75 MM for Sedgebrook and $4.25MM for Monarch Landing.

<u>Credit Bid for Stalking Horse</u>.  After the initial round of bidding, the Debtors will only consider in determining whether a bidder is higher $625,000 of the Break Up Fee for Sedgebrook and $125,000 of the Break Up Fee for Monarch Landing.

<u>Live Bids</u>.  The "live" bid for a project is either of the following:

(a) for the first round of bidding, the joint component of the Stalking Horse Bid;

(b) thereafter,

(x) if the most recent eligible bid is a joint bid, that joint bid is the "live" bid for each project, or

(y) if the most recent eligible bid with respect to such project is a single bid: (i) that single bid is the "live" bid for such project, and (ii) the highest single bid for the other project is the "live" bid for the other project.

There can be only one "live" bid per project at any time.

A bidder may submit more than one bid during the course of the auction, but may submit only one bid per round.  That is, a bidder whose bid from an earlier round was topped (or even wiped out) by a subsequent bid may submit a bid in a later round if it meets the criteria for an eligible bid.

<u>Processing of Eligible Bids</u>.  As each Eligible Bid is received, it will be processed as follows:

(a) If it is a single bid, it will wipe out the "live" bid with respect to the applicable project and if that "live" bid is a joint bid, it will also wipe out the corresponding bid at the other project.  The Eligible Bid will then become the new "live" bid for the applicable project.

(b) If it is a joint bid, it will become the new "live" bid at each project but it will not wipe out the immediately preceding live bids.

<u>Credit Bidding</u>.  Credit Bidding by the applicable bond trustee will be permitted after the final round of the auction and the announcement of the highest and best bid or bids, although each trustee can only credit bid on its own project.  The credit bid must pay the break up fee in cash and must agree to assume the residence and care agreements.

<u>Example:</u>[3]

Stalking Horse –Treated as two bids:

A)    Joint bid of Monarch $4.25 MM and Sedgebrook at $15.75 MM

B)    Two single bids of Monarch at $3 MM and Sedgebrook at $15.75 MM

Round 1– Monarch $6MM; Sedgebrook $16MM (joint bid)

*At this point, the joint bid component of the Stalking Horse Bid is wiped out but the single bid component of the Stalking Horse Bid is not wiped out.  But Round 1 is the new "live bid" at each project.*

Round 2 – Sedgebrook $17MM

*At this point, the highest bid is Sedgebrook at $17MM.  Round 1 is wiped out at Sedgebrook and, since it was a joint bid, Round 1's Monarch bid is also wiped out., making the "live" (and only) bid on Monarch equal to $3MM.  In addition, the Sedgebrook single bid from the single bid component of the Stalking Horse Bid is wiped out.*

Round 3 – Monarch $4.25MM; Sedgebrook $17.1MM (joint bid)
*At this point, Round 3 becomes the "live" bid at each project.  Note that the joint bid must exceed the joint component of the Stalking Horse Bid.*

Round 4 – Monarch $9.25; Sedgebrook $13.25 (joint bid)
*At this point, Round 5 becomes the "live" bid at each project.*

If there are no further bids, the auction concludes and Round 4 has the winning bids for both projects.

4974676v.3

---

[3] The allocations and examples are for illustrative purposes only and are not intended to represent the values of the projects in any way.