| | |
|---|---|
| Vincent P. Slusher, State Bar No. 00785480 | J. Mark Chevallier, State Bar No. 04189170 |
| vince.slusher@dlapiper.com | mchevallier@mcslaw.com |
| DLA Piper LLP (US) | James G. Rea, State Bar No. 24051234 |
| 1717 Main Street, Suite 4600 | jrea@mcslaw.com |
| Dallas, Texas 75201 | McGUIRE, CRADDOCK & STROTHER, P.C. |
| Telephone: (214) 743-4572 | 3550 Lincoln Plaza |
| Facsimile: (972) 813-6267 | 500 N. Akard St. |
| | Dallas, TX 75201 |
| Thomas R. Califano, NY Bar No. 2286144 | Telephone: (214) 954-6800 |
| thomas.califano@dlapiper.com | Facsimile: (214) 954-6850 |
| Jeremy R. Johnson, NY Bar No. 4307617 | |
| jeremy.johnson@dlapiper.com | Martin T. Fletcher, MD Bar No. 07608 |
| DLA Piper LLP (US) | mfletcher@wtplaw.com |
| 1251 Avenue of the Americas | Stephen F. Fruin, MD Bar No. 08456 |
| New York, New York 10020-1104 | sfruin@wtplaw.com |
| Telephone: (212) 335-4500 | Thomas J. Francella, Jr., DE Bar No 3835 |
| Facsimile: (212) 335-4501 | tfrancella@wtplaw.com |
| | WHITEFORD, TAYLOR AND PRESTON, L.L.P. |
| | Seven Saint Paul Street |
| | Baltimore, MD 21202 |
| | Telephone: (410) 347-8700 |
| | Facsimile: (410) 752-7092 |
| Attorneys for Lincolnshire Campus, LLC and Naperville Campus, LLC, Debtors and Debtors in Possession | Attorneys for Monarch Landing, Inc. and Sedgebrook, Inc., Debtors and Debtors in Possession |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 10-34176** |
| | § | |
| **LINCOLNSHIRE CAMPUS, LLC, *et al.*[1]** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

**SECOND SUPPLEMENTAL MOTION OF LINCOLNSHIRE CAMPUS, LLC AND NAPERVILLE CAMPUS, LLC FOR ORDERS (I) APPROVING BID PROCEDURES AND PROVIDING CERTAIN PROTECTIONS TO SENIOR CARE DEVELOPMENT, LLC; AND (II) AUTHORIZING THE (A) SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN <u>EXECUTORY CONTRACTS AND LEASES</u>**

The above captioned debtors and debtors-in-possession (the "<u>Debtors</u>"), by their

---

[1] The Debtors in these chapter 11 cases are (a) Lincolnshire Campus, LLC, Case No. 10-34176, (b) Naperville Campus, LLC, Case No. 10-34177, (c) Monarch Landing, Inc., Case No. 10-34179, and (d) Sedgebrook, Inc., Case

proposed attorneys, hereby file this second supplement (the "Supplement") to their previously filed Motion [Dkt. No. 35] (the "Original Motion") and the first supplement thereto [Dkt. No. 170] (the "First Supplement" and together with the Original Motion, the "Motion") seeking the entry of orders (I) approving bid procedures and providing certain protections to Senior Care Development, LLC ("SCD" or "Buyer"); and (II) authorizing (a) the sale of substantially all of the Debtors' assets, free and clear of all liens, claims and encumbrances and (b) the assumption and assignment of certain executory contracts and leases.  In support of this Supplement, the Debtors respectfully represent as follows:

## Preliminary Statement[2]

Subsequent to the filing of the Original Motion and First Supplement, in order to facilitate the bidding process and to encourage bidding at the Auction – which ultimately produced a winning bid for the Debtors' assets for roughly double the initial stalking horse bid – the Debtors accepted certain conditions requested by the Bidders to provide bidding incentives during the Auction and agreed to seek and support Court approval of these bidding incentives. Therefore, by this Supplement, Debtors hereby supplement the Motion and seek approval of the Court of the bidding conditions negotiated during the Auction.  Debtors also seek the Court's approval of the Debtors' acceptance of the Final Bid of $40 million as the highest and best bid for the Debtors' assets.  Finally, Debtors' seek the Courts approval of the Allocation of the Final Bid among the Debtors' two campuses offered for sale at the Auction.  A summary of the Debtors business operations, as well as a summary of the APA and the bidding procedures as proposed to the Court are contained in the Original Motion and First Supplement, all of which is

---

No. 10-34178.

[2] All terms used in the Preliminary Statement section shall have the meanings provided in this Supplement.

incorporated herein by reference.

## Jurisdiction and Venue

1. The Court has jurisdiction over the Motion and this Supplement pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein is sections 105(a), 363, and 365 of title 11 of United States Code (the "<u>Bankruptcy Code</u>"), rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the Standing Order Concerning Guidelines for Compensation and Expense Reimbursement of Professionals, for Early Disposition of Assets in Chapter 11 Cases, and for Motions and orders Pertaining to Use of Cash Collateral Post Petition Financing, dated December 21, 2000, issued by the Bankruptcy Court for the Northern District of Texas (the "<u>Standing Order</u>").

## The Chapter 11 Cases

4. On June 15, 2010 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors continue in the possession of their property and the management of their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6. No trustee, examiner or committee has been appointed in these cases by the United States Trustee.

## The Bidding Incentives Resulted in Achieving The Maximum Purchase Price

7. In order to facilitate the bidding that took place at the auction of the Debtors' assets on September 14, 2010 (the "<u>Auction</u>"), and in an effort to obtain the highest purchase price possible for the Debtors' assets, the Debtors agreed to certain conditions during the Auction and now seeks this Court's approval of such conditions. As explained in the Motion, the

paramount goal in any proposed auction of property of the estate is to maximize the proceeds received by the estate. See, e.g., In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); Integrated Res., Inc, 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting In re Atlanta Packaging Prods., Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)). To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. See, e.g., Integrated Res., 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); In re Fin. News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991), ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

8. The two bidders at the Auction (the "Bidders" and each a "Bidder") were Senior Care Development, LLC ("SCD"), and Erickson Living Holdings, LLC ("ELH"). First, prior to commencing the Auction, the Debtors agreed to pay ELH an expense reimbursement of $350,000 conditioned upon ELH making a bid of at least $350,000 above the stalking horse bidders next bid over ELH's topping bid. SCD at the Auction did submit a bid over the amount of ELH's Topping Bid and ELH then submitted a bid that was $350,000 in excess of SCD's bid. The bidding then continued until ELH offered a bid of $24 million. At that point, SCD made an offer of $25.5 million on the condition that the losing bidder would receive an incentive payment of 8% of the difference between $24 million and the losing bidder's final bid. In order to

encourage bidding and obtain the highest sale price possible, the Debtors agreed to the incentive payment. ELH then made a bid of $27 million conditioned upon an incentive payment to the loser of the auction of 8% of the difference between $24 million and $25.5 million, and 15% of the difference between $25.5 and the winning bid. Again, in an effort to induce more bidding, the Debtors agreed to the condition of the incentive payment. Bidding then continued until ELH made a bid of $31.15 million, and SCD made the final bid of $40 million (the "Final Bid"). As the losing bidder, ELH is, in accordance with the conditions precedent agreed to by the Debtors, entitled to 8% of the difference between $24 million and $25.5 million, and 15% of the difference between $25.5 million and $40 million. They are also entitled to the $350,000 expense reimbursement agreed to by the Debtors. If such conditions are approved by the Court, ELH will, upon closing of the sale to SCD, be paid from the proceeds of the sale an (i) expense reimbursement of $350,000 and (ii) incentive payment of $2,295,000 (8% of the difference between $24 million and $25.5 million, and to 15% of the difference between $25.5 million and $40 million). The Debtors believe that, in their capacities as fiduciaries, the bidding incentives requested by the Bidders and agreed to by the Debtors were in the best interest of their estates. Moreover, the bidding incentives induced additional bidding of $16 million. Clearly, the bidding incentives agreed to by the Debtors created postpetition benefits to the Debtors' estates and should therefore be accepted by this Court. See In re O'Brien Envtl Energy, Inc., 181 F.3d 527, 533 (3d Cir. 1999).

**The Final Bid Is The Highest And Best Offer**

9. In their sound business judgment, the Debtors have determined that the $40 million Final Bid offered by SCD was the highest and best offer received for the Debtors' assets offered for purchase at the Auction. The market is considered a reliable indicator of value, and

the best evidence of value is a recent sale price for the property in question. <u>Bank of Am. Nat'l Trust and Sav. Assoc. v. 203 N LaSalle St, P'ship</u>, 526 U.S. 434,458 (1999) ("[T]he best way to determine value is exposure to a market"); <u>VFB LLC v. Campbell Soup Co.</u>, 482 F.3d 624,633 (3d Cir. 2007) ("Absent some reason to distrust it, the market price is 'a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses.'") (internal citations omitted); <u>Ford Motor Credit Co. v. Dobbins</u>, 35 F.3d 860, 870 (4th Cir. 1994) ("We hold that when secured collateral has been sold, so long as the sale price is fair and is the result of an arm's-length transaction, courts should use the sale price, not some earlier hypothetical valuation . . ."); <u>Romley v. Sun Nat'l Bank (In re Two "S" Corp.)</u>, 875 F.2d 240, 244 (9th Cir. 1989) ("Evidence of other appraised values is also irrelevant, because the sale price is a better indicator of the asset's value than any estimate of value given prior to sale."); <u>Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.)</u>, 151 B.R. 931, 935 (9th Cir. B.A.P. 1993) ("Here, there was an actual sale. The offered price . . . is conclusive evidence of the property's value. . . The value of [the secured party's] secured claim should have been determined by reference to the actual sale proceeds."); <u>In re Kids Stop of America, Inc.</u>, 64 B.R. 397, 401 (Bankr. M.D. Fla. 1986) ("If there is to be a disposition of the property, then the valuation of the collateral should be based on the funds received from the disposition so long as the disposition is commercially reasonable."); <u>In re TennOHIO Transp. Co.</u>, 247 B.R. 715, 720 (Bankr. S.D. Ohio 2000) (valuation was determined by "[t]he sale price obtained . . .").

10.     Here, the Debtors engaged in extensive marketing efforts with respect to the sale of the Debtors' assets. The Debtors, through their retained professional brokers, provided extensive materials regarding their business and property to numerous perspective purchasers. Ultimately, the two Bidders attended the Auction, and the Debtors provided them with incentives

to induce the highest possible bid for the Debtors' assets. The Debtors believe, in their best business judgment, that the $40 million Final Bid accurately reflects the fair market value the Debtors' assets. The Court should therefore accept the Final Bid as the sale price for the Debtors' assets offered for purchase at the Auction.

## The Allocation Is Fair And Reasonable

11. As part of the bidding process at the Auction, the Bidders were encouraged to allocate their bid amounts to the two campuses being offered for sale by the Debtors: The Monarch and Sedgebrook campuses. The Final Bid allocated (the "Allocation") $30 million to the Sedgebrook campus and the remaining $10 million to the Monarch campus. The Allocation is based on bids received during an open and competitive bidding process. The Allocation assigned by SCD to the Debtors' assets, which the Debtors submit is fair and reasonable, and a proper exercise of the Debtors' sound business judgment, were factored into the winning Final Bid. There is no precise formula or methodology for allocation mandated by rule or case law. See In re LTV Steel Co., Inc., 285 B.R. 259, 266-68 (Bankr. N.D. Ohio 2002) ("There is no standard operating procedure . . . valuing assets and allocating sale proceeds is a fact intensive process [and] [n]either the Court nor parties located authority for use of a particular model or paradigm for allocating in this complex setting."). These cases are complex chapter 11 cases. SCD was the stalking horse bidder in this sales process and SCD has had extensive access to the Debtors' business information and financials. During this process SCD and the Debtors have pursued the valuation of the Debtors' assets and Allocation of the sale proceeds in a methodical and reasonable manner. In short, the Debtors' and their financial advisors believe that the Allocation is well within the range of reasonableness and accepting such Allocation as part of the Final Bid is a sound exercise of the Debtors' business judgment and maximized the value of the

assets.  In addition, the Allocation was discussed and approved by the Indenture Trustees, Not-for-Profit Debtors and Residents' Committee.

## Notice

12.    Notice of this Supplement has been provided to (a) the Office of the United States Trustee for the Northern District of Texas; (b) the Debtors' twenty largest unsecured creditors on a consolidated basis; and (c) counsel Senior Care Development, LLC.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

WHEREFORE, the Debtors respectfully request that the Court enter orders (i) granting the relief sought in the Motion as supplemented by this Supplement and (ii) granting such other and further relief as is just and proper.

Dated: September 17, 2010.

| **DLA PIPER LLP (US)** | **McGUIRE, CRADDOCK & STROTHER, P.C.** |
|---|---|
| By: /s/ Vincent P. Slusher | By: /s/ J. Mark Chevallier |
| Vincent P. Slusher, State Bar No. 00785480 | J. Mark Chevallier, State Bar No. 04189170 |
| vince.slusher@dlapiper.com | mchevallier@mcslaw.com |
| DLA Piper LLP (US) | James G. Rea, State Bar No. 24051234 |
| 1717 Main Street, Suite 4600 | jrea@mcslaw.com |
| Dallas, Texas 75201 | McGUIRE, CRADDOCK & STROTHER, P.C. |
| Telephone:  (214) 743-4572 | 3550 Lincoln Plaza |
| Facsimile:  (972) 813-6267 | 500 N. Akard St. |
| | Dallas, TX 75201 |
| | Telephone:  (214) 954-6800 |
| Thomas R. Califano, NY Bar No. 2286144 | Facsimile:   (214) 954-6850 |
| thomas.califano@dlapiper.com | |
| Jeremy R. Johnson, NY Bar No. 4307617 | Martin T. Fletcher, MD Bar No. 07608 |
| jeremy.johnson@dlapiper.com | mfletcher@wtplaw.com |
| DLA Piper LLP (US) | Stephen F. Fruin, MD Bar No. 08456 |
| 1251 Avenue of the Americas | sfruin@wtplaw.com |
| New York, New York  10020-1104 | Thomas J. Francella, Jr., DE Bar No 3835 |
| Telephone:  (212) 335-4500 | tfrancella@wtplaw.com |
| Facsimile:  (212) 335-4501 | WHITEFORD, TAYLOR AND PRESTON, L.L.P. |
| | Seven Saint Paul Street |
| | Baltimore, MD 21202 |

|  |  |
|---|---|
| | Telephone: (410) 347-8700<br>Facsimile: (410) 752-7092 |
| Attorneys for Lincolnshire Campus, LLC and Naperville Campus, LLC, Debtors and Debtors in Possession | Attorneys for Monarch Landing, Inc. and Sedgebrook, Inc., Debtors and Debtors in Possession |