Jason R. Kennedy
State Bar No. 24027100
Fred D. Wilshusen
State Bar No. 21665590
THOMAS, FELDMAN & WILSHUSEN, LLP
9400 NCX Tower, Suite 900
9400 North Central Expressway
Dallas, Texas 75231-5027
Tel:  (214) 369-3008
Fax: (214) 369-8393
jkennedy@tfandw.com
fwilshusen@tfandw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 10-34176 |
| | § | |
| Lincolnshire Campus, LLC, *et al.* | § | Chapter 11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**MOTION OF COMMERCIAL CARPET CONSULTANTS, INC., CAIN MILLWORK, INC., SUPERIOR TRUSS & PANEL, INC., SHERMAN MECHANICAL, INC., BECKER ELECTRICAL GROUP, JUST RITE ACOUSTICS, INC., VALLEY FIRE PROTECTION SYSTEMS, LLC, G.W. THIEL, INC., SERVICE DRYWALL AND DECORATING, AND BANK OF AMERICA, N.A. AS SUCCESSOR INTEREST TO WELCH DRYWALL CO. FOR RECONSIDERATION AND TO AMEND ORDER AUTHORIZING AND APPROVING (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS TO SENIOR CARE DEVELOPMENT, LLC; (II) THE PROCEDURES GOVERNING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS; AND (III) RELATED RELIEF**

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

COME NOW, Commercial Carpet Consultants, Inc., Cain Millwork, Inc., Superior Truss & Panel, Inc., Sherman Mechanical, Inc., Becker Electrical Group, Just Rite Acoustics, Inc., Valley Fire Protection Systems, LLC, G.W. Thiel, Inc., Service Drywall and Decorating, and Bank of America, N.A., successor in interest to Welch Drywall Co. **(collectively referred to as "M&M Lien Claimants")**, creditors and parties in interest herein, and file this Motion for Reconsideration and to Amend Order Authorizing and Approving (I) the Sale of Substantially All of the Debtors' Assets to

Senior Care Development, LLC; (II) the Procedures Governing the Assumption and Assignment of Contracts; and (III) Related Relief **[Doc. No. 316—the "Sale Order"]**, as follows:

# I.
# BACKGROUND

1. The undersigned counsel represent ten subcontractors **(the "M&M Lien Claimants")** who furnished work, services, labor and/or materials on a construction project known as Sedgebrook Renaissance Gardens located in Lincolnshire, Illinois **(the "Lincolnshire Property"),** and who perfected mechanic's and materialman's liens on Lincolnshire Property because of non-payment. The list of M&M Lien Claimants and their principal lien amounts are amended as follows:

| | |
|---|---|
| Commercial Carpet Consultants, Inc. | $242,819.23 |
| Cain Millwork, Inc. | $184,558.99 |
| Superior Truss & Panel, Inc. | $48,528.00 |
| Sherman Mechanical, Inc. | $268,512.50 |
| Becker Electrical Group | $591,305.97 |
| Just Rite Acoustics, Inc. | $53,400.00 |
| Valley Fire Protection Systems, LLC | $25,954.50 |
| G.W. Thiel, Inc. | $166,334.40 |
| Service Drywall and Decorating, Inc. | $168,133.32 |
| Bank of America, N.A., successor in interest to Welch Drywall Co. | $323,739.24 |
| Total: | **$2,073,286.15** |

The owner of the Lincolnshire Property is Lincolnshire Campus, LLC **("Lincolnshire")**, who is one of the debtors in this bankruptcy proceeding.

2.  Even if another lien, such as a mortgage or deed of trust, was first filed, under Illinois law the M&M Lien Claimants are still senior lien holders to the extent that their work enhanced the value of the land being improved, *See* 770 ILCS 60/16; *see also Lyons Savings v. Gash Assoc.*, 665 N.E.2d 326 (Ill. App. Ct. 1996); *Lawn Manor Savings & Loan Ass'n v. Hukvari,* 397 N.E.2d 247 (Ill. App. Ct. 1979).

3.  The Lincolnshire Property was the subject of the Debtors' Motion of Lincolnshire Campus, LLC and Naperville Campus, LLC for Orders (I) Approving Bid Procedures and Providing Certain Protections to Senior Care Development, LLC; and (II) Authorizing the (A) Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances and (B) The Assumption and Assignment of Certain Executory Contracts and Leases **[Doc. No. 35—"Motion to Sell"]**.

4.  M&M Lien Claimants filed an objection to the sale on July 15, 2010 **[Doc. no. 158]**, filed a supplemental objection on September 17, 2010 **[Doc. no. 280]**, and attended both the hearing on the bid procedures and the September 21 sale hearing.

5.  The Motion to Sell was granted after a hearing on September 21, 2010. A proposed order on the Motion to Sell was uploaded by Debtors' counsel on September 23, 2010. The M&M Lien Claimants submitted their objections to the proposed order by email to opposing counsel and to the Court's deputy that same day. Nevertheless, the Sale Order **[Doc. No. 316]** was entered by the Court on September 24, 2010.

## II.
## ARGUMENT AND AUTHORITIES

6.  M&M Lien Claimants ask the Court to reconsider and the amend the Sale Order under Bankruptcy Rules 9023 and 9024 and Rules 59 and 60 of the Federal Rules of Civil Procedure.

**A.   No notice was given that sale proceeds would be disbursed prior to determination of the extent, validity, and priority of liens**

7.   The Sale Order provides that $3.5M be escrowed for the benefit of lien claimants on the Lincolnshire Property, and that the remainder, after payment of certain fees and costs, may be disbursed to the Indenture Trustees. However, M&M Lien Claimants assert that the issue of disbursement was not ripe for the September 21 hearing, that no notice whatsoever of same had been given, and that all the sale proceeds should be escrowed pending a determination of the relative lien priorities of M&M Lien Claimants and the indenture trustee on the Lincolnshire Property **(the "Lincolnshire Trustee")**. In the alternative, the sale proceeds should be escrowed until a proper request for disbursement is on file and a properly noticed hearing can be had.

8.   Neither the Motion to Sell nor any other motion on file in this case requested that sales proceeds be disbursed or provided <u>any notice whatsoever</u> that proceeds would be disbursed. On the contrary, the Motion to Sell informed lien holders that "any lienholder also will be adequately protected by having its liens, if any, attach to the sale proceeds . . . ." (See Motion to Sell-Doc. No. 35-, p 31). Neither the Supplemental Motion to Sell nor the Second Supplemental Motion to Sell said any different. Further, the only draft of the sale order on file before the hearing (which was filed as Exhibit "C" to the Motion to Sell) provided that all encumbrances would attach to proceeds (see paras. 8 & 9 on p 9), and made no mention of proceeds being disbursed.

9.   Thus, neither M&M Lien Claimants nor any other mechanic's lien creditors (there are at least ten who did not attend the hearing through counsel, and who had no reason to know they needed to) were given notice that the sale proceeds would be disbursed. As such, due process requires that the determination of the issues of disbursement and the escrow amount for lien creditors await a determination of the

relative lien priorities of M&M Lien Claimants and the Lincolnshire Trustee, or at the very least until a proper request for disbursement is on file and a properly noticed hearing can be had. This issue is of critical importance because, though an escrow of $3.5M was set aside for lien creditors on Lincolnshire, that amount may not be enough to cover their senior lien claims and it is unclear whether M&M Lien Claimants have a right to seek disgorgement from the Lincolnshire Trustee.

**B.     Lien claimants are entitled to disgorgement from the Lincolnshire Trustee if senior mechanic's lien claims exceed the $3.5M escrow.**

10.     Even if the Sale Order stands as is with respect to the disbursement of funds and escrow amounts, at the very least it should provide that:

> Notwithstanding the foregoing, in the event the escrowed amount is insufficient to pay all Mechanic's Lien Holders who establish that their liens are superior or equal in right to those of the Indenture Trustee, the Indenture Trustee may be required to disgorge and pay the Mechanic's Lien Holders up to the amount of any such insufficiency. This court retains jurisdiction in this proceeding and any related adversary proceeding to determine such claims.

As set forth above in paragraph 2, M&M Lien Claimants will be preferred and senior to the Lincolnshire Trustee to the extent that M&M Lien Claimants' work on the Lincolnshire Property enhanced the value of the land. M&M Lien Claimants believe that under the doctrine of enhancement there is a high probability that their entire lien claims will be determined to be senior to the Lincolnshire Trustee.

11.     In addition, though an abstractors report shows that lien claims total $3,505,692.92 (and counsel for Lincolnshire Trustee admitted that there were $3.5M in mechanic's liens at the September 21 hearing), the report is far from a guarantee that there are only $3.5M in liens. And even if the $3.5M is accurate, lien claimants will be entitled to attorneys fees (See 770 ILCS 60/17) and interest at 10% per annum (See 770

ILCS 60/1). As such, senior mechanic's lien claims could easily exceed the $3.5M escrow.

12.  Thus, it was premature and improper at the sale hearing to limit mechanic's lien holders to $3.5M with no right to seek disgorgement. Rather, the rights of the parties should be preserved until the true extent, validity, and priority of lien is determined in the adversary. In addition, it is one thing for the escrow amount to be limited to $3.5M. However, it is quite another to say that should the mechanic's lien claimants establish that they have senior liens in an amount greater than $3.5M, the Lincolnshire Trustee can refuse to give back money it is not entitled to. There is no reason, justification, or legal basis for such a result.

13.  The court's ruling on this issue was unclear to the undersigned counsel. If it was in fact the Court's ruling that M&M Lien Claimants would not have a right of disgorgement, then in essence the ruling has determined the extent of mechanic's lien claims prematurely, without notice, and outside of an adversary proceeding. Therefore, M&M Lien Claimants ask that the Sale Order include the disgorgement language above. It is the only fair and just result. The Lincolnshire Trustee should not be able to retain money that rightfully belongs mechanic's lien claimants, which, in essence, amounts to a license to steal.

  WHEREFORE, PREMISES CONSIDERED, M&M Lien Claimants respectfully pray that the Sale Order be modified as requested above, and for such other and further relief, at law and in equity, to which M&M Lien Claimants may show themselves to be justly entitled.

Dated: October 5, 2010

        Respectfully submitted,

        /s/ Jason R. Kennedy
        Jason R. Kennedy
        State Bar No. 24027100
        Fred D. Wilshusen, Esq.
        State Bar No. 21665590
        Thomas, Feldman & Wilshusen, L.L.P.
        9400 NCX Tower, Suite 900
        9400 North Central Expressway
        Dallas, Texas 75231-5027
        Tel. (214) 369-3008
        COUNSEL FOR M&M LIEN CLAIMANTS

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this document was served on the 5th day of October, 2010 on all parties registered to received electronic notice in this case via the Court's ECF system, and on the following via the ECF system and/or email:

Vincent P. Slusher
DLA Piper LLP US
1717 Main Street, Suite 4600
Dallas, TX 75201

| | |
|---|---|
| Cynthia Johnson Rerko, Esq.<br>Cynthia Johnson Rerko, Esq.<br>  A Professional Corporation<br>2508 State Street, Number Six<br>Dallas, Texas 75201<br>Telephone No.: (214) 965-9500<br>Fax No.: (214) 965-9501 | William W. Kannel Esq.<br>Mintz, Levin, Cohn, Ferris,<br>  Glovsky and Popeo,P.C.<br>One Financial Center<br>Boston, Massachusetts 02111<br>Telephone No.: (617) 542-6000<br>Fax No.: (617) 542-2241 |

        /s/ Jason R. Kennedy
        Jason R. Kennedy